# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 10 C 2596 | DATE | July 9, 2012 |
| CASE TITLE | Larry Carter (B46983) vs. Dr. Sims, et al. | | |

**DOCKET ENTRY TEXT**

The Clerk is instructed to terminate plaintiff's motion in response to summary judgment. (Dkt. No. 55). Plaintiff's fifth renewed motion for appointment of counsel (Dkt. No. 58), is denied. Defendants' motion for summary judgment (Dkt. No. 46), is granted. All pending motions are denied as moot. Civil Case Terminated.

■ [ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Pro se plaintiff Larry Carter, an Illinois Department of Corrections inmate, has brought a civil right suit pursuant to 42 U.S.C. § 1983 challenging his treatment while detained at the Cook County Jail. He raises an allergic reaction to food claim, and a dental care claim. The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c), and Local Rule 73.1(b). (Dkt. Nos. 26, 29). Pending before the Court are defendants' motion for summary judgment. (Dkt. No. 46).

As an initial matter, the Court addresses plaintiff's "motion in response to summary judgment," (Dkt. No. 55), and motion for appointment of counsel. (Dkt. No. 58). The motion in response to summary judgment is not a motion, but instead is simply a response to defendants' summary judgment motion. The Clerk is instructed to terminate plaintiff's motion in response as a separate motion. (Dkt. No. 55).

Plaintiff's present motion for appointment of counsel is his fifth request for counsel in this litigation. (Dkt. Nos. 4, 12, 34, 51, 58). The Court previously denied the first four requests. (Dkt. Nos. 10, 13, 36, 53). The Court sees no change in circumstances suggesting appointing counsel is now appropriate. As previously explained by the Court, this is a routine conditions case, a type of case that is often litigated by pro se prisoners. (Dkt. No. 53 (citing *Romanelli v. Sullivan*, 615 F.3d 847, 851-52 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc))). Plaintiff has been able to successfully advocate for himself throughout the proceedings. The pending summary judgment motion presents an undisputed factual record and the controlling law is clear. There is no need for appointment of counsel for plaintiff.

As a final initial matter, defendants argue that plaintiff failed to comply with Local Rule 56.1. They are correct, his response fails to meet any of the requirements of the local rule. Plaintiff received the Local Rule 56.2 warning regarding summary judgment. (Dkt. No. 47); *see also Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). The Court has the right to expect compliance with the local rules. *Ciomber v. Coop. Plus,*

*Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). The Court has reviewed the record in full and cites directly to the relevant evidence in the record. Defendants' Local Rule 56.1 statement of fact is deemed admitted for purposes of evaluating the summary judgment motion to the extent that it is supported by the record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Turning to the motion for summary judgment, the following facts are drawn from the record and are presented in the light most favorable to plaintiff, the non-moving party, with all reasonable inferences drawn in his favor. *Groesch v. City of Springfield*, 635 F.3d 1020, 1022 (7th Cir. 2011) (citing *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009); *Darst v. Interstate Brand Corp.*, 512 F.3d 903, 907 (7th Cir. 2008)).

Plaintiff entered the Cook County Jail on a first degree murder charge in July 2008. (Dkt. No 48-1 at 14-16). He was detained at the Jail for almost two years until being transferred to the Illinois Department of Corrections (IDOC) in April 2010. (*Id.* at 15). In October 2008, plaintiff began suffering an allergic reaction while detained at the Jail. (*Id.* at 24). He experienced swelling of various body parts, and had red itchy hives on his face, ears, hands, feet and fingers. (*Id.* at 25).

Plaintiff initially thought he was having a reaction to his blanket. (*Id.* at 25). He was seen in October 2008 by defendant Dr. Sims. (*Id.* at 26). The doctor suggested that the reaction was caused by the food plaintiff was eating at the jail. (*Id.*).

Dr. Sims treated plaintiff's allergic reactions for the rest of plaintiff's time at Cook County. (*Id.*). His primary strategy was to prescribe medications to treat the reactions, including Benadryl, Zantac, and Atrarax. (*Id.* at 27). The medication controlled and reduced plaintiff's symptoms. (*Id.* at 27-28).

Plaintiff's food was also changed from a regular to low fat diet. (*Id.* at 28). However, plaintiff suggests that going from regular to low fat food had no effect. (*Id.*). The food, according to plaintiff, was prepared in the same facility. He believes that any allergic reaction issues would not be addressed by receiving food presumably prepared in the same kitchen. (*Id.*).

Despite controlling the symptoms, plaintiff is concerned about why he developed the allergic reaction in the first place. (*Id.* at 28). He is upset that he was never taken to a hospital or had any additional tests performed to identify the cause. (*Id.* at 31). Plaintiff concedes that the medication controlled the situation, but he would experience breakouts when he did not receive his medication. (*Id.*). Plaintiff does not detail how often he did not receive his medication, it appears that this is more of a general concern, and that the use of prescription medication controlled the situation. (*Id.*). Interestingly, plaintiff has continued to suffer from the allergic reactions since being transferred to the IDOC in 2010. (*Id.* at 32). He presently takes Prednisone and Benadryl in the IDOC. (*Id.* at 7, 33).

Plaintiff names Dr. Sims and Superintendent Moreci as defendants for this claim. As mentioned above, Dr. Sims cared for plaintiff while he was at the Jail. As to Moreci, plaintiff verbally complained about the situation while Moreci was walking through plaintiff's cell block. (*Id.* at 48). Moreci allegedly wrote down plaintiff's name and said he would get back to him, but allegedly failed to do so. (*Id.* at 48-49). Moreci is the superintendent of the division where plaintiff was detained, and apparently would walk through the division at times as part of supervising the division.

As to plaintiff's dental claim, he received dental care, including having a wisdom tooth extracted in March 2009, while detained at the Jail. (Dkt. No. 48-4 at 13, 19-21). Plaintiff had a cavity in the tooth,

requiring its removal. (*Id.* at 14-15). The tooth was causing him significant pain in the months prior to his detention at the Jail. (*Id.* at 16).

A few days after the extraction, plaintiff found that he still had remnants of the extracted tooth in his gums. (*Id.* at 22). For the following several weeks, chewing food would dislodge portions of the remaining tooth and he would have to spit out the tooth pieces. (*Id.*). This caused plaintiff pain. (*Id.* at 23). Plaintiff concedes that the pain steadily subsided following the extraction. (*Id.* at 28).

Plaintiff claims that he began experiencing the tooth remnants and pain following his March 2009 tooth extraction. Yet, there is no evidence in the record that he took any actions to remedy this situation until he filed a grievance almost a year later in February 2010. (*Id.* at 30). On March 22, 2010, plaintiff was seen by the dentist, who examined the tooth fragment, cleaned off the plaque, and concluded that plaintiff needed a follow up appointment. (*Id.* at 24). However, plaintiff did not receive a follow up visit because he was transferred to the IDOC on April 16, 2010. (*Id.* at 25).

Plaintiff brings suit against the two dentists who cared for him at the Cook County Jail. Dr. Provzovsly was the dentist who performed the tooth removal in March 2009, (*Id.* at 29), and Dr. Montenez saw plaintiff at the March 2010 follow up appointment. (*Id.* at 24).

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to evidence demonstrating a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citations omitted). Presented evidence must be competent evidence that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted). Defendants, as the moving party, have the initial burden of showing there is no genuine dispute and they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If defendants meet this burden, plaintiff must respond with specific facts showing that the jury could find in his favor, and that there is a genuine dispute that needs to be adjudicated at trial. *Carmichael*, 605 F.3d at 460 (citing *Anderson*, 477 U.S. at 251-52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wheeler*, 539 F.3d at 634). A genuine dispute is one that could change the outcome of the suit, and contains evidence sufficient to allow a reasonable jury to return a favorable verdict for plaintiff. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (citations omitted).

As a pretrial detainee, the Fourteenth Amendment requires that plaintiff receive adequate medical care and the Court applies a deliberate indifference standard for evaluating these claims. *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). A deliberate indifference claim requires: (1) an objectively serious condition, and (2) defendants acted with deliberate indifference to plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Turning to the allergic reaction claim, defendants first argue that plaintiff did not suffer from an objectively serious medical condition. Defendants are correct that not every bump or bruise qualifies as an objectively serious condition. Correctional officials who "'refuse[] to dispense[] bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue — the sorts of ailments for which many people who are not in prison do not seek medical attention — does not by itself [] violate the

# STATEMENT

Constitution.'" *Rodriguez v. Plymouth Ambulance Servs.*, 577 F.3d 816, 829 (7th Cir. 2009) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997); *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)). Instead, "a medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

Here, plaintiff's allergic reaction condition was diagnosed by Dr. Sims as requiring treatment and he continued to receive treatment once transferred to the IDOC. He faced serious consequences from his condition, including swelling of his extremities, eyes, mouth and throat. Defendants cite to *Slater v. Lemens*, a non precedential opinion from the Seventh Circuit, for the proposition that skin ailments do not present objectively serious conditions. 400 Fed. Appx. 109, 112 (7th Cir. 2010). The prisoner in *Slater* complained about unhealed cuts, sores, and blisters, among other ailments. *Id.* at 110. The Seventh Circuit concluded that these minor ailments were not the type of serious issue that a person outside of prison would seek medical treatment. *Id.* In contrast, plaintiff's allegation is that he suffered from a severe allergic reaction. The skin ailments were some of his symptoms, but this is not the full extent of his situation. Plaintiff can demonstrate that he suffered from an objectively serious condition as to his allergic reaction claim.

However, plaintiff cannot demonstrate that defendants acted with the deliberate indifferent mindset. This mindset is one of intentional misconduct approaching criminal misconduct — negligence or malpractice is not sufficient to result in a constitutional violation. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

As to Dr. Sims, he "is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). "'Deliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *Gayton v. McCoy*, 593 F.3d 610, 622-23 (7th Cir. 2010) (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996)). "'Deliberate indifference is not medical malpractice. . . .'" *Roe*, 631 F.3d at 857 (quoting *Duckworth*, 532 F.3d at 679).

Plaintiff's allergy claim against Dr. Sims must fail. First, Dr. Sims provided plaintiff medication to address his conditions, and this was the same course of treatment that plaintiff continued to receive once in the IDOC. The fact that the IDOC doctors followed the same treatment as Dr. Sims suggests that Dr. Sims's treatment was not "a substantial departure from accepted professional judgment, practice[s] or standards . . . ." *Gayton*, 593 F.3d at 622-23 (citation omitted).

Furthermore, plaintiff's dispute with Dr. Sims is that he wanted additional treatment to determine the cause of his allergic reactions. But plaintiff is not entitled to "unlimited access to medical care," he is only constitutionally guaranteed "adequate medical care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (citation omitted). Plaintiff concedes that the prescription medication was treating his medical conditions. Thus, he was receiving the constitutionally mandated basic medical care by addressing his symptoms, and so Dr. Sims was not constitutionally deficient by refusing to provide plaintiff additional treatment to determine the source of the allergic reaction.

Turning to Superintendent Moreci, the record is clear that Dr. Sims was responsible for plaintiff's care

# STATEMENT

on the allergy issue. Moreci's status as a supervisor is not enough, by itself, to make him liable because agency principles of *respondent superior* and vicarious liability do not apply to § 1983 claims. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008) (citing *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978); *Hosty v. Carter*, 412 F.3d 731, 733 (7th Cir. 2005)). Furthermore, "[p]ublic official do not have a free-floating obligation to put things right, disrespecting rules [] along the way. . . . [N]o prisoner is entitled to insist that one employee do[es] another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Moreci, as the non medical official, can only be held liable when his actions were the product of deliberate indifference.

Here, plaintiff fails in his claims against Moreci for two reasons. First, there is no indication that Moreci was deliberately indifferent to plaintiff's objectively serious medical needs. Plaintiff alleges that Moreci failed to follow up on his needs, but this suggests negligence at most. Furthermore, the Court fails to see how Moreci could be held liable when it has already ruled that Dr. Sims provided constitutionally sufficient medical care to plaintiff. Plaintiff allegedly complained to Moreci about his care, but Dr. Sims was already providing adequate care. There was nothing more for Moreci to do (assuming he had an obligation to intervene in plaintiff's care), because Dr. Sims was also providing the constitutionally required care for plaintiff.

As a final point, plaintiff does not raise a claim regarding being exposed to conditions resulting in the development of the allergic reaction. Dr. Sims and Moreci were allegedly responsible for treating plaintiff's ailment once it developed, but plaintiff does not allege, and the record does not suggest, that they exposed him to the conditions that allegedly resulted in the ailment. *Roe*, 631 F.3d at 864 ("A successful § 1983 plaintiff therefore must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.") (emphasis in original). Furthermore, the fact that plaintiff continues to suffer from this ailment since his transfer to the IDOC suggests that the ailment was not caused by the food at the Cook County Jail, as Dr. Sims suggested. Regardless of what caused plaintiff's ailment, plaintiff does not claim that Dr. Sims or Moreci were responsible for exposing him to the alleged harmful food. Their only role was to treat plaintiff's symptoms.

Turning to the dental claim, defendants first argue that plaintiff failed to exhaust his claims through the Cook County grievance process. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this [T]itle, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). A detainee is required to utilize a jail grievance system before filing a §1983 suit so that the jail officials have an opportunity to take corrective action to remedy the problem and be aware of alleged ongoing issues. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Dole*, 438 F.3d at 809; *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

The Cook County Jail requires detainees to exhaust grievances through the jail's internal system. *Brengettcy v. Horton*, 423 F.3d 674, 678 (7th Cir. 2005). The jail has thirty days to respond to the grievance. *Id.* If the initial grievance is denied, the detainee must submit a required appeal to complete the grievance process. *Id.*

Defendants point out that plaintiff filed a grievance in February 2010 that resulted in his March 22, 2010 follow up dental visit regarding the tooth fragment remaining from the extraction. (Dkt. No. 48-4 at 31). The grievance was answered by the jail explaining that plaintiff was seen on March 22nd. (*Id.*). There

# STATEMENT

is no appeal. (*Id.*). Plaintiff received the response to his grievance on April 5th. (*Id.* at 32).

However, just a week and a half later on April 16th, plaintiff was transferred to the IDOC. Plaintiff is not required to exhaust a claim once the grievance process becomes unavailable. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Here, plaintiff was transferred out of the jail before he could perfect his appeal of the initial grievance and the Jail could respond. The exhaustion requirement is an affirmative defense and defendants have the burden of establishing the defense. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Defendants provide no evidence to suggest that plaintiff could bring his appeal of the Cook County Jail grievance once he had been relocated to the IDOC. The failure to exhaust affirmative defense is rejected.

Turning to the merits of the dental claim, plaintiff's dental needs sets forth an objectively serious medical condition. "[D]ental care is one of the most important medical needs of inmates." *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005). This need was diagnosed and was being treated by the dentists. Thus, the question in the dental claim is whether plaintiff has put forth competent evidence to show that the dentist defendants had the subjective deliberate indifferent mind set when treating him. And, as discussed above when discussing the claim against Dr. Sims, the dentists' performance is evaluated within the context of evaluating them as medical professionals.

Dr. Provzovsly allegedly botched the tooth extraction in March 2009, leaving a portion of the tooth in plaintiff's gum. This claim is controlled by *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010). *McGowen* considered a claim of a botched tooth extraction by a prison dentist. The Seventh Circuit held that this allegation failed to state a deliberate indifference claim. At most, a botched tooth extraction is "only negligence, perhaps gross negligence," because there is nothing in the record "suggesting that [the dentist] maliciously intended to cause [the plaintiff] pain or otherwise performed the procedure in a way that he knew would create a substantial risk of complications." *McGowen*, 612 F.3d at 643 (citing *Farmer*, 511 U.S. at 842-45). The situation presented in this case is identical to the one considered in *McGowan*. As there, there is nothing here to suggest that Dr. Provzovsly's performance was anything more than non-cognizable negligence. (There is no indication of diversity of citizenship between the parties to support a state law negligence claim).

This leaves plaintiff's pain from the tooth extraction. A delay in addressing a detainee's medical needs "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged [a detainee's] pain." *McGowan*, 612 F.3d at 640 (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Gayton*, 593 F.3d at 619; *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007)). Unfortunately for plaintiff, there is no evidence in the record that he communicated his dental issue to anyone after the original procedure in March 2009 until his grievance in February 2010. Plaintiff also concedes that his pain decreased following the March 2009 extraction. (Dkt. No. 48-4 at 28).

Dr. Provzovsly had no reason to suspect that plaintiff was suffering from complications requiring a follow up until almost a year after the procedure. Plaintiff then received the follow up care from Dr. Montenez in March 2010 in response to his February 2010 grievance. Dr. Montenez examined plaintiff and determined that he needed a follow up appointment. The follow up appointment did not occur because plaintiff was then transferred to the IDOC. Plaintiff does not contest that dental treatment is available to him at the IDOC.

The Court recognizes that several weeks lapsed between the original grievance in February 2010 reporting that plaintiff had dental pain, and the follow up appointment with Dr. Montenez in March 2010.

| STATEMENT |
|---|
| Yet, plaintiff own actions undermine any argument that this few week delay constitutes deliberate indifference. Plaintiff waited almost a year to report the tooth fragment in his gum following the March 2009 extraction. He was apparently able to live with the issue for almost a year without complaining about it. This suggests that the pain was not very great. Additionally, there is nothing to suggest that the pain became considerably worse in February 2010 when plaintiff wrote his grievance.<br><br>     As a final note, plaintiff argues that Dr. Montenez failed to properly schedule him for a follow up appointment, improperly thinking that he would be discharged from the jail and sent back home. Plaintiff points out that this was wrong because he was being transferred to the IDOC. But any confusion about plaintiff's new destination (transfer to the IDOC verses release into the community) is not relevant because plaintiff was leaving the jail and had access to dental care in the IDOC. |